**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY,

      Plaintiff,

v.                                  Case No.  2:21-cv-00635

WILLIAM E. JOHNSON, P.C.;
WILLIAM E. JOHNSON, ESQ.; and
BRETT WAYMAN,

      Defendants.

---

## COMPLAINT

---

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its complaint against Defendants William E. Johnson, P.C. ("Johnson Firm"), William E. Johnson ("Johnson" and together with the Johnson Firm, "Johnson Defendants"), and Brett Wayman ("Wayman" and collectively with the Johnson Defendants, "Defendants"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is a citizen of the State of Montana.

2.     The Johnson Firm is a professional corporation formed under the laws of the Commonwealth of Virginia with its principal place of business in Gloucester, Virginia.

3.      Johnson is an attorney licensed in the Commonwealth of Virginia and, upon information and belief, domiciled in and a citizen of the Commonwealth of Virginia. Johnson is, upon information and belief, the sole member of the Johnson Firm.

4.      Wayman is, upon information and belief, a resident of Gloucester County, Virginia and is domiciled in and a citizen of the Commonwealth of Virginia.

5.      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Local Civil Rule 3 because a substantial part of the events giving rise to the claims for relief occurred in this district.

## GENERAL ALLEGATIONS

7.      In this insurance coverage action, ALPS seeks a judgment declaring Lawyers Professional Liability Insurance Policy No. ALPS20295-4 issued by ALPS to the Johnson Firm for the policy period April 13, 2020 to April 13, 2021 ("Policy") does not afford coverage to the Johnson Defendants with respect to the claim ("Claim") by Wayman against the Johnson Defendants, as articulated in the suit styled *Wayman v. Rumsey and Bugg, P.C., et al.*, No. CL21004931-00 (Cir. Ct. for the City of Richmond, Va.) ("Suit"). A true and correct copy of the Policy is attached as Exhibit A.

### I.  Background

8.      The Claim arises from the Johnson Defendants' representation of Wayman following personal injuries Wayman sustained on November 5, 2014 while working as a seaman for Jackson Creek Marine, LLC ("Jackson Creek"). (November 9, 2021 Complaint in the Suit

("November 2021 Complaint") ¶¶ 7-8, 17, 49-50.   A true and correct copy of the November 2021 Complaint is attached as Exhibit B.).

### A.  November 5, 2014 Incident

9.      On or around November 5, 2014, Wayman alleges he was working for Jackson Creek aboard the tugboat "JACQUELINE A", delivering a loaded grain barge to facilities allegedly owned and operated by Perdue Agribusiness, LLC ("Perdue Agribusiness" and together with Perdue Farms, Inc. and Perdue Foods, LLC, "Perdue") on the Elizabeth River, near the City of Portsmouth, Virginia.  (Exhibit B ¶¶ 8-13; *see also* February 3, 2016 Complaint ("February 2016 Complaint") in the suit styled *Wayman v. Jackson Creek Marine, LLC, et al.*, No. 16-407 (Cir. Ct. City of Portsmouth, Va.) ("Wayman Suit") ¶¶ 3, 6-13.  A true and correct copy of the February 2016 Complaint is attached as Exhibit C.).

10.      Wayman alleges he was injured when he stepped off the JACQUELINE A onto a deteriorated mooring caisson—or "dolphin"—allegedly maintained by Perdue Agribusiness, the "dolphin" collapsed, and Wayman was thrown into the Elizabeth River ("November 5, 2014 Incident").  (Exhibit B ¶¶ 14-18; Exhibit C ¶¶ 6-13).

### B.  The Johnson Defendants' Representation of Wayman

#### 1.  Wayman Suit

11.      Wayman, upon information and belief, initially engaged the Johnson Defendants to represent him with respect to maritime, negligence, and other claims arising from the November 5, 2014 Incident.  (Exhibit B ¶¶ 49-50).

12.      Wayman, upon information and belief, subsequently engaged attorneys with maritime law experience, A. Davis Bugg, Jr. and Albert D. Bugg, III with Rumsey & Bugg, P.C. ("Rumsey & Bugg"), to assist with Wayman's representation.  (Exhibit B ¶¶ 49-50).

### a. Portsmouth Circuit Court Proceedings

13.     On February 3, 2016, on behalf of Wayman, Rumsey & Bugg and the Johnson Defendants filed the February 2016 Complaint in the Wayman Suit against Jackson Creek and Perdue in the Circuit Court for the City of Portsmouth, Virginia ("Portsmouth Circuit Court"). (Exhibit B ¶ 50; Exhibit C).

14.     In the February 2016 Complaint—which was filed under federal maritime law, the Jones Act (46 U.S.C. § 30184, *et seq.*), and Virginia law—Wayman alleged negligence against Jackson Creek and Perdue arising from the November 5, 2014 Incident.  (Exhibit C).

15.     Wayman alleged, as a result of such negligence, Wayman "sustained serious and permanent personal injuries, has sustained in the past and will sustain in the future significant physical pain and mental anguish, has incurred disfigurement, has incurred in the past and will incur in the future medical expenses in an effort to cure himself of the injuries sustained in the [November 5, 2014 Incident], has lost and will continue to lose earnings from being unable to work at his calling, [and] has sustained in the past and will sustain in the future significant inconvenience as a result of injuries sustained in the" November 5, 2014 Incident. (Exhibit C ¶ 23).

16.     Wayman sought damages of $15 million in the February 2016 Complaint. (Exhibit C, Prayer for Relief).

17.     By correspondence dated March 29, 2016 ("March 2016 Correspondence"), Perdue notified the Portsmouth Circuit Court of an Order of Publication and Stay issued on March 24, 2016 ("March 2016 Order") in the suit styled *In re: the Complaint of Jackson Creek Marine, LLC as Owner of the Tug Jacqueline A*, No. 2:16-cv-98 (E.D. Va.)

4

("Jackson Creek Suit").   True and correct copies of the March 2016 Correspondence and March 2016 Order are attached as Exhibit D.

18.     Pursuant to the March 2016 Order, the Wayman Suit was stayed pending resolution of Jackson Creek's complaint in the Jackson Creek Suit, which sought protection under the Jones Act from any claims or liability arising from the November 5, 2014 Incident. (Exhibit B ¶ 51; Exhibit D, March 2016 Order at 2).

19.     By order dated January 19, 2017 ("January 2017 Dismissal Order"), upon joint motion by Wayman and Jackson Creek, the Portsmouth Circuit Court dismissed Jackson Creek from the Wayman Suit, with prejudice, following resolution of the dispute between Wayman and Jackson Creek.   A true and correct copy of the January 2017 Dismissal Order is attached as Exhibit E.

20.     By order dated November 30, 2017, upon Wayman's unopposed motion, the court in the Jackson Creek Suit lifted the stay imposed on the Wayman Suit.   (Exhibit B ¶ 52).

21.     On December 6, 2017, Perdue filed a motion to transfer the venue of the Wayman Suit to the Circuit Court for the City of Chesapeake, Virginia ("December 2017 Motion to Transfer Venue").   A true and correct copy of the December 2017 Motion to Transfer Venue is attached as Exhibit F.

22.     Wayman consented to the transfer of venue and, by order dated December 19, 2017 ("December 2017 Transfer Order"), the Portsmouth Circuit Court transferred the Wayman Suit to the Circuit Court for the City of Chesapeake ("Chesapeake Circuit Court") under Case No. CL18-49.   (*See* Exhibit B ¶ 54).   A true and correct copy of the December 2017 Transfer Order is attached as Exhibit G.

**b. Chesapeake Circuit Court Proceedings**

23.     On January 19, 2018, Rumsey & Bugg, the Johnson Defendants, and Patricia Bugg Turner with Spotts Fain, P.C. ("Spotts Fain")—on behalf of Wayman—filed the first amended complaint in the Wayman Suit ("January 2018 Complaint").  A true and correct copy of the January 2018 Complaint is attached as Exhibit H.

24.     In the January 2018 Complaint, Wayman removed Jackson Creek, Perdue Farms, Inc., and Perdue Foods, LLC as defendants and substituted Perdue Agribusiness as the sole defendant in the Wayman Suit.  (Exhibit H at 1; *see also* Exhibit B ¶ 53).

25.     In the January 2018 Complaint, Wayman alleged two causes of action against Perdue Agribusiness arising from the November 5, 2014 Incident: (a) negligence under Virginia law and (b) violations of the duties owed by Perdue Agribusiness to Wayman under general maritime law, *i.e.*, to exercise reasonable care, to provide a safe mooring, and to warn of any danger it knew or could have reasonably determined in the exercise of ordinary care. (Exhibit H ¶¶ 29-34).

26.     In 2018 and 2019, the parties in the Wayman Suit engaged in fact and expert discovery in advance of a scheduled June 2019 trial.  (*See* Exhibit B ¶ 54).

27.     On May 22, 2019, the court in the Wayman Suit held a hearing on various motions in limine filed by the parties in advance of trial.  (Exhibit B ¶ 58).  At the conclusion of the motions hearing, the court granted Perdue Agribusiness' motion to exclude testimony from Wayman's only liability expert, John Tylawski.  (*Id.*).

28.     By order dated May 31, 2019 ("May 2019 Non-Suit Order"), upon motion by Wayman pursuant to Va. Code Ann. § 8.01-380, the Chesapeake Circuit Court granted Wayman leave to non-suit the Wayman Suit, *i.e.*, dismiss it without prejudice.  (Exhibit B ¶ 59; May 2019

Non-Suit Order at 1.  A true and correct copy of the May 2019 Non-Suit Order is attached as Exhibit I.).

29.     The Johnson Defendants "were listed under counsel's endorsement for Wayman on the" May 2019 Non-Suit Order and received a copy of the May 2019 Non-Suit Order. (Exhibit B ¶ 60; Exhibit I at 2-3).

30.     Wayman alleges the Johnson Defendants, Rumsey & Bugg, and Spotts Fain "nonsuited the [Wayman Suit] with the mistaken belief that they could refile the lawsuit within six months of the date of the [May 2019 Non-Suit Order]."  (Exhibit B ¶ 61).

**2.  Re-Filed Wayman Suit**

31.     On June 28, 2019, on behalf of Wayman, Rumsey & Bugg and the Johnson Defendants filed a complaint in the Chesapeake Circuit Court against Perdue Agribusiness ("June 2019 Complaint") in the suit styled *Wayman v. Perdue Agribusiness, LLC*, No. 19-4694 (Cir. Ct. City of Chesapeake, Va.) ("Re-Filed Wayman Suit").   (Exhibit B ¶ 62; June 2019 Complaint.  A true and correct copy of the June 2019 Complaint is attached as Exhibit J.).

32.     The June 2019 Complaint, like the January 2018 Complaint in the Wayman Suit, alleged negligence and violations of general maritime law against Perdue Agribusiness arising from the November 5, 2014 Incident.  (Exhibit J ¶¶ 1, 36-40).

33.     In Wayman's Prayer for Relief in the June 2019 Complaint, Wayman sought $15 million in compensatory damages, $15 million in punitive damages, interest, and costs of suit.  (Exhibit J, Prayer for Relief).

34.     On July 23, 2019, in response to the June 2019 Complaint, Perdue Agribusiness filed a plea in bar and demurrer ("July 2019 Plea in Bar").  (Exhibit B ¶ 63; July 2019 Plea in

Bar.  A true and correct copy of the July 2019 Plea in Bar, including Perdue Agribusiness' Brief and Exhibits in support of the Plea in Bar, is attached as Exhibit K.).

35.     Perdue Agribusiness served the Johnson Defendants with a copy of the July 2019 Plea in Bar by First Class Mail dated July 23, 2019.  (Exhibit K at 3 (Certificate of Service)).

36.     In the July 2019 Plea in Bar, Perdue Agribusiness alleged "Wayman's suit is time-barred because it is a maritime tort claim subject to the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C. § 30106, and was not filed within three years of the date of the accident in suit."  (Exhibit K at 1).

37.     In its brief in support of the July 2019 Plea in Bar, Perdue Agribusiness alleged:

Wayman's suit is time-barred.  Because Wayman's claims concern an alleged maritime tort, the Uniform Statute of Limitations for Maritime Torts (46 U.S.C. § 30106) (hereinafter the "Maritime Statute") provided him three years from the date of his injury in which to file suit.  The accident in suit occurred on November 5, 2014, well over three years before this suit was filed.  Although Wayman originally filed suit before his three-year limit expired, he voluntarily took a nonsuit of that action, putting the parties in the same position as if he had never filed suit at all.  Virginia law permits a plaintiff asserting a *state* law claim to re-file that claim within six months of the plaintiff's first nonsuit, but Virginia law does not affect the running of the *federal* Maritime Statute that governs Wayman's claim.  The law is clear on this point: because he voluntarily dismissed his prior suit, the nonsuit does not toll the running of the three-year statute of limitations applicable to his claims, which expired on November 5, 2017.  Accordingly, Wayman's suit is time-barred and must be dismissed with prejudice.

(Exhibit K, Brief at 1).

38.     On September 10, 2019, Rumsey & Bugg, the Johnson Defendants, and Spotts Fain filed Wayman's opposition to the July 2019 Plea in Bar ("September 2019 Opposition").  A true and correct copy of the September 2019 Opposition is attached as Exhibit L.

39.     On September 13, 2019, Perdue Agribusiness filed its reply in support of the July 2019 Plea in Bar ("September 2019 Reply") and served a copy of its reply on all counsel for

4873-4326-9380.3

Wayman, including the Johnson Defendants.  A true and correct copy of the September 2019 Reply is attached as Exhibit M.

40.    On September 23, 2019, the parties submitted supplemental briefing in response to the court's request at a September 18, 2019 hearing on the July 2019 Plea in Bar ("September 2019 Supplemental Briefing").  A true and correct copy of the September 2019 Supplemental Briefing is attached as Exhibit N.

41.    By letter opinion dated November 1, 2019 ("November 2019 Letter Opinion"), the court in the Re-Filed Wayman Suit determined the three-year statute of limitations in 46 U.S.C. § 30106 applied, equitable tolling of the statute was not warranted, and the Re-Filed Wayman Suit was time-barred.  (Exhibit B ¶ 64; November 2019 Letter Opinion at 4-5.  A true and correct copy of the November 2019 Letter Opinion is attached as Exhibit O.).

42.    The November 2019 Letter Opinion was addressed to counsel for Perdue Agribusiness and certain counsel for Wayman—Rumsey & Bugg and Spotts Fain—and ordered counsel for Perdue Agribusiness to prepare a proposed order consistent with the November 2019 Letter Opinion.  (Exhibit O at 1, 5).

43.    By order dated November 22, 2019 ("November 2019 Order"), consistent with the November 2019 Letter Opinion, the court determined the Re-Filed Wayman Suit was "barred by 46 U.S.C. § 30106", sustained the July 2019 Plea in Bar, and dismissed Wayman's June 2019 Complaint with prejudice.  (Exhibit B ¶ 64; November 2019 Order at 1.  A true and correct copy of the November 2019 Order is attached as Exhibit P.).

44.    The November 2019 Order was endorsed as "seen and objected to for reasons stated in briefs and at the hearing" by Rumsey & Bugg, the Johnson Defendants, and Spotts Fain. (Exhibit P at 2).

45.     On December 19, 2019, Wayman filed a notice of appeal with respect to the November 2019 Order ("December 2019 Notice of Appeal").  A true and correct copy of the December 2019 Notice of Appeal is attached as Exhibit Q.

46.     New counsel for Wayman—Clinton W. Verity and Danielle Matie Smith with Harman, Claytor, Corrigan & Wellman ("Harman Claytor")—filed Wayman's December 2019 Notice of Appeal and, on or around December 18, 2019, served a copy of the December 2019 Notice of Appeal on the Johnson Defendants, Rumsey & Bugg, Spotts Fain, and counsel for Perdue Agribusiness.  (Exhibit Q at 1-2).

47.     On December 19, 2019, Mr. Verity and Ms. Smith filed a notice of appearance on behalf of Wayman in the Re-Filed Wayman Suit ("December 2019 Notice of Appearance") and, on or around December 18, 2019, served a copy of the December 2019 Notice of Appearance on the Johnson Defendants, Rumsey & Bugg, Spotts Fain, and counsel for Perdue Agribusiness. (December 2019 Notice of Appearance at 1-4.  A true and correct copy of the December 2019 Notice of Appearance is attached as Exhibit R.).

48.     By correspondence to Johnson from Mr. Verity dated January 7, 2020 ("January 7, 2020 Correspondence"), Mr. Verity advised Johnson "that [Harman Claytor] has been retained by Brett Wayman with respect to [the Re-Filed Wayman Suit] and any potential legal malpractice claims against [Johnson] and/or [the Johnson] [F]irm."  (January 7, 2020 Correspondence at 1.  A true and correct copy of the January 7, 2020 Correspondence is attached as Exhibit S.).

49.     By correspondence dated September 2, 2020 from the Deputy Clerk of the Virginia Supreme Court ("September 2020 Appeal Denial"), the Virginia Supreme Court rejected Wayman's petition for an appeal of the November 2019 Order because "the Court is of

the opinion there is no reversible error in the judgment complained of."   (September 2020 Appeal Denial at 1.  A true and correct copy of the September 2020 Appeal Denial is attached as Exhibit T.).

50.     By correspondence dated September 9, 2020 ("September 9, 2020 Correspondence"), the Johnson Defendants advised ALPS of the September 2020 Appeal Denial and provided ALPS, for the first time, with notice of circumstances from which a claim could arise from the Johnson Defendants' representation of Wayman.

## C.  The Suit

51.     On November 9, 2021, Wayman filed the November 2021 Complaint in the Suit against the Johnson Firm, Rumsey & Bugg, and Spotts Fain (collectively, "Attorney Parties"). (Exhibit B).

52.     In the Suit, Wayman alleges a legal malpractice cause of action against the Johnson Firm and other Attorney Parties arising from the Attorney Parties' representation of Wayman "in his claims against Perdue, including the prosecution of" the Wayman Suit and the Re-Filed Wayman Suit, following the November 5, 2014 Incident.  (Exhibit B ¶ 66).

53.     Wayman alleges "all three [Attorney Parties]", during "the pendency of the" Wayman Suit and the Re-Filed Wayman Suit, (a) "had an attorney-client relationship with Wayman", (b) "represented Wayman in the pleadings and motions filed", and (c) "counseled Wayman on litigation strategies and decisions."  (Exhibit B ¶¶ 49, 55-57, 66).

54.     In the only cause of action in the November 2021 Complaint, for legal malpractice, Wayman alleges the Johnson Firm and other Attorney Parties: (a) "owed Wayman a duty to exercise a reasonable degree of care, skill, and dispatch in rendering the services for which they were employed, including, but not limited to representing him competently by, in

11

particular, making legal decisions necessary to preserve his claims and causes of action and properly disclosing his expert's opinions under Rule 4:1"; and (b) "breached their duty to Wayman, and breached the applicable standard of care, by voluntarily dismissing the [Wayman Suit] when the tolling provisions of Va. Code § 8.01-229 were inapplicable to Wayman's claims and by failing to properly disclose Wayman's expert's opinions under Rule 4:1." (Exhibit B ¶¶ 67-68).

55.     Wayman further alleges: (a) "[a]s a direct and proximate cause of [the Attorney Parties'] breaches of the standard of care," the June 2019 Complaint in the Re-Filed Wayman Suit, which was "refiled by [the Attorney Parties] on Wayman's behalf[,] was dismissed with prejudice"; (b) Wayman "has no available recourse to pursue his once-cognizable claims for personal injury due solely to the actions of the" Johnson Firm and other Attorney Parties; and (c) Wayman "is entitled to recover from the [Johnson Firm and other Attorney Parties] the sums that he would have been able to recover for his personal injury claims had the [Attorney Parties] not breached their duty to him." (Exhibit B ¶¶ 69-71).

56.     In Wayman's Prayer for Relief in the November 2021 Complaint, Wayman seeks: (a) a "judgment in his favor and against" the Johnson Firm and other Attorney Parties "in the amount of $15,000,000 in compensatory damages"; (b) $15,000,000 in punitive damages; (c) "interest (including prejudgment interest)"; (d) costs of suit; and (e) "such other and further relief as [the] Court deems proper." (Exhibit B, Prayer for Relief).

## II.  The Policy

### A.  2020 Application

57.     On April 15, 2020, Johnson executed an application ("2020 Application") on behalf of the Johnson Firm for the Policy.

58.     In the Claim History Section of the 2020 Application, Johnson answered "No" to the question: "Since the date of your previous application with ALPS, have you or any member of the Firm become aware of or acquired knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former attorney in the Firm or any Predecessor Firm, regardless of the merit of such claim?"

59.     In the Individual Attorney Supplement to the 2020 Application Johnson executed on April 15, 2020, Johnson answered "No" to the question: "Since the date of your previous application with ALPS, have you become aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you or any current or former Attorney in the Firm or its predecessors, regardless of the merit of such claim?"

60.     The 2020 Application provides:

**IT IS AGREED THAT ANY CLAIM ARISING FROM OR IN CONNECTION WITH ANY CLAIM, SUIT, FACT, EVENT, CIRCUMSTANCE, ACT, ERROR, OR OMISSION DISCLOSED OR THAT SHOULD HAVE BEEN DISCLOSED IN RESPONSE TO THE CLAIM HISTORY SECTION OF THIS APPLICATION WILL BE EXCLUDED FROM COVERAGE UNDER THE POLICY.**

(Emphasis in original).

61.     The 2020 Application further provides:

Failure to report any claim made against the applicant Firm or any attorney in the applicant Firm under any current or previous insurance policy, or failure to timely disclose facts, events or circumstances which may give rise to a claim against any current or prior insured, may result in the absence of insurance coverage for any such claim, facts, events, or circumstance which should have been reported, and may result in the cancellation or rescission of any policy ALPS may issue in reliance on this application.

## B.  The Policy

62.     ALPS issued the Policy to the Johnson Firm for the policy period April 13, 2020 to April 13, 2021.  (Exhibit A, Declarations Items 1 and 4).   The Policy provides limits of liability of $2,000,000 each claim and $2,000,000 in aggregate.  (*Id*., Declarations Item 5).

63.     Johnson is listed as the sole individual attorney insured under the Policy. (Exhibit A, Declarations Item 3).

64.     The Policy provides legal professional liability insurance on a claims made and reported basis.  (Exhibit A, Insuring Agreements § 1.A).

65.     The Policy's insuring agreement states, in relevant part:

A.     COVERAGE

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that all of the following conditions are satisfied:

1.     The Claim arises from a Wrongful Act that occurred on or after the Retroactive Coverage Date set forth in Item 2 of the Declarations;

2.     At the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim;

3.     Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date; and

4.     The Claim is not otherwise covered under any other insurance policy that the Company has issued to the Named Insured.

4873-4326-9380.3

B.     DEFENSE AND CLAIM EXPENSES

1.     For any Claim covered under this Policy, the Company shall have the right and the duty to defend such Claim even if any or all of the allegations of the Claim are groundless, false or fraudulent[.]

2.     The Company shall pay Claim Expenses in accordance with the terms of this Policy.  The Company shall not have a duty to defend or to pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit A, Insuring Agreements §§ 1.A-1.B.2) (emphasis in original).

66.     "Claim" is defined in the Policy as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured."  (Exhibit A, Definitions § 2.C).

67.     "Claim Expenses" is defined in the Policy, in relevant part, as "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by" ALPS.  (Exhibit A, Definitions §§ D.1-D.2).

68.     "Wrongful Act" is defined in the Policy as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured."  (Exhibit A, Definitions § 2.DD).

69.     "Damages" is defined in the Policy as "[m]onetary award by way of judgment or final arbitration, or any settlement;" the Policy specifically excludes from the definition of "Damages":

3.      Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

4.      Awards deemed uninsurable by law;

5.      Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

6.      Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;

7.      Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or

8.      Pollution, contamination or erosion of any property; [or]

9.      post-judgment interest.

(Exhibit A, Definitions § 2.H & Virginia Amendatory Endorsement).

70.     The Policy provides:

6.B.1   When an Insured becomes aware of a Wrongful Act that could reasonably be expected to be the basis of a Claim, but no Claim arising therefrom has yet been made, then as a condition precedent to the Company's obligation to defend or indemnify the Insured under this Policy, the Insured shall immediately give written notice to the Company.  Such notice shall include the fullest information obtainable concerning the potential Claim.

* * *

6.B.4   . . . [I]n the event an Insured fails to give written notice to the Company of a potential Claim, as described in Section 6.B.1, prior to the end of the Policy Period in which the Insured first becomes aware of the act, error, omission, or Personal Injury, then no coverage for any such Claim shall be afforded to the Insured under any future policy issued by the Company.

(Exhibit A, Conditions §§ 6.B.1 & 6.B.4).

16

71.     The Policy does not apply to:

ANY     CLAIM     ARISING     FROM     OR     IN     CONNECTION
WITH . . . [a]ny Wrongful Act that occurred prior to the Effective Date of this
Policy, if . . . [p]rior to the Effective Date of this Policy, any Insured gave or
should have given to any insurer, notice of a Claim or potential Claim arising
from or in connection with the Wrongful Act, or from any Wrongful Act that is
connected temporally, logically or causally, by any common fact, circumstance,
situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit A, Exclusions § 3.E.3) (emphasis in original).

72.     The Policy does not apply to:

ANY     CLAIM     ARISING     FROM     OR     IN     CONNECTION
WITH . . . [a]ny Wrongful Act that occurred prior to the Effective Date of this
Policy, if . . . [t]here is an earlier-incepting policy of professional liability
insurance that provides coverage for the Claim, or would have provided coverage
for the Claim if the Insured's obligations under that policy had been complied
with, regardless of the amount, if any, of the available limits of liability of the
prior policy, and regardless of whether or not the deductible provisions or limits
of liability of the prior policy are different from those of this Policy[.].

(Exhibit A, Exclusions § 3.E.2) (emphasis in original).

### III.  Notice to ALPS and ALPS's Coverage Position

73.     By correspondence dated September 9, 2020, the Johnson Defendants first
provided ALPS with notice of circumstances from which a claim could arise from the Johnson
Defendants' representation of Wayman.  (September 9, 2020 Correspondence).

74.     By email correspondence from Wayman's counsel dated November 8, 2021,
ALPS received notice of the Suit and a copy of the November 2021 Complaint.

75.     By correspondence dated November 22, 2021, ALPS agreed to provide the
Johnson Defendants with a defense against the Suit under the Policy subject to a complete
reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS
has provided such defense.

## FIRST CAUSE OF ACTION
### (For a Declaration the Policy Does Not Afford Coverage to the Johnson Defendants for the Claim – Against all Defendants)

76.     ALPS incorporates and realleges paragraphs 1 through 75 as if fully set forth herein.

77.     The Policy potentially provides coverage for claims only if "[a]t the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim[.]"  (Exhibit A, Insuring Agreements § 1.A.2).

78.     The Policy specifically excludes from coverage any claim arising from or in connection with "[a]ny Wrongful Act that occurred prior to" the Policy's April 13, 2020 effective date if:

> Prior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit A, Exclusions § 3.E.3).

79.     Under the Policy, "Wrongful Acts" is defined as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured."  (Exhibit A, Definitions § 2.DD).

80.     The following occurred prior to the Policy's April 13, 2020 effective date:

a.      On February 3, 2016, on behalf of Wayman, the Johnson Defendants and Rumsey & Bugg filed the February 2016 Complaint in the Wayman Suit. (Exhibit B ¶ 50; Exhibit C).  In the February 2016 Complaint—which was filed under federal maritime law, the Jones Act (46 U.S.C. § 30184, *et seq.*), and Virginia law—Wayman alleged negligence against Jackson Creek and Perdue arising from the November 5, 2014 Incident. (Exhibit C).

18

b.     On January 19, 2018, the Johnson Defendants, Rumsey & Bugg, and Spotts Fain—on behalf of Wayman—filed the first amended complaint in the Wayman Suit.  (Exhibit H).  In the January 2018 Complaint, Wayman alleged two causes of action against Perdue Agribusiness arising from the November 5, 2014 Incident: (1) negligence under Virginia law and (2) violations of the duties owed by Perdue Agribusiness to Wayman under general maritime law.  (*Id.* ¶¶ 29-34).

c.     On May 22, 2019, the Chesapeake Circuit Court held a hearing in the Wayman Suit on various motions in limine filed by the parties in advance of trial and, at the conclusion of the hearing, granted Perdue Agribusiness' motion to exclude testimony from Wayman's only liability expert, John Tylawski.  (Exhibit B ¶ 58; Exhibit O at 1).

d.     By order dated May 31, 2019, the Chesapeake Circuit Court granted Wayman leave to non-suit the Wayman Suit, *i.e.*, dismiss Wayman's January 2018 Complaint without prejudice.  (Exhibit B ¶ 59; Exhibit I; Exhibit O at 1).

e.     On June 28, 2019, on behalf of Wayman, the Johnson Defendants and Rumsey & Bugg filed the June 2019 Complaint against Perdue Agribusiness in the Re-Filed Wayman Suit.  (Exhibit J; Exhibit B ¶ 62).

f.     On July 23, 2019, in response to the June 2019 Complaint in the Re-Filed Wayman Suit, Perdue Agribusiness filed the July 2019 Plea in Bar.  (Exhibit K; Exhibit B ¶ 63).  In the July 2019 Plea in Bar, Perdue Agribusiness alleged "Wayman's suit is time-barred because it is a maritime tort claim subject to the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C. § 30106, and was not filed within three years of the date of the accident in suit."  (Exhibit K at 1; Exhibit B ¶ 63).

g.     In its brief in support of the July 2019 Plea in Bar, Perdue Agribusiness alleged: "Wayman's suit is time-barred.  Because Wayman's claims concern an alleged maritime tort, the Uniform Statute of Limitations for Maritime Torts (46 U.S.C. § 30106) . . . provided him three years from the date of his injury in which to file suit.  The accident in suit occurred on November 5, 2014, well over three years before [the Re-Filed Wayman Suit] was filed.  Although Wayman originally filed suit before his three-year limit expired, he voluntarily took a nonsuit of that action, putting the parties in the same position as if he had never filed suit at all.  Virginia law permits a plaintiff asserting a *state* law claim to re-file that claim within six months of the plaintiff's first nonsuit, but Virginia law does not affect the running of the *federal* Maritime Statute that governs Wayman's claim.  The law is clear on this point: because he voluntarily dismissed his prior suit, the nonsuit does not toll the running of the three-year statute of limitations applicable to his claims, which expired on November 5, 2017.

Accordingly, Wayman's suit is time-barred and must be dismissed with prejudice." (Exhibit K, Brief at 1; Exhibit B ¶ 63) (emphasis in original).

h.     By letter opinion dated November 1, 2019 in the Re-Filed Wayman Suit, the Chesapeake Circuit Court determined the three-year statute of limitations in 46 U.S.C. § 30106 applied, equitable tolling of the statute was not warranted, and the Re-Filed Wayman Suit was time-barred. (Exhibit O; Exhibit B ¶ 64).

i.     By order dated November 22, 2019, consistent with the November 2019 Letter Opinion, the Chesapeake Circuit Court determined the Re-Filed Wayman Suit was "barred by 46 U.S.C. § 30106", sustained the July 2019 Plea in Bar, and dismissed Wayman's June 2019 Complaint with prejudice. (Exhibit P at 1; Exhibit B ¶ 64).

j.     On December 19, 2019, new counsel for Wayman—Mr. Verity and Ms. Smith with Harman Claytor—filed a notice of appearance on behalf of Wayman in the Re-Filed Wayman Suit and a notice of appeal with respect to the November 2019 Order. (Exhibits Q & R).

k.     By correspondence dated January 7, 2020, Mr. Verity of Harman Claytor advised the Johnson Defendants that Harman Claytor had "been retained by Brett Wayman with respect to [the Re-Filed Wayman Suit] and any potential legal malpractice claims against [Johnson] and/or [the Johnson] [F]irm." (Exhibit S).

81.     Despite knowledge of the events described in Paragraph 80—including, but not limited to, the November 2019 Order dismissing the Re-Filed Wayman Suit with prejudice and the January 7, 2020 Correspondence advising the Johnson Defendants that Wayman had retained counsel to represent him with respect to "potential legal malpractice claims against" the Johnson Defendants—the Johnson Defendants did not notify ALPS of any actual or potential claim against the Johnson Defendants prior to the Policy's April 13, 2020 effective date.

82.     The Johnson Defendants first notified ALPS of circumstances from which the Claim could arise via the September 9, 2020 Correspondence.

83.     The Claim, as articulated in the Suit, is outside the coverage afforded by the Policy because: (a) prior to the April 13, 2020 effective date of the Policy, the Johnson

Defendants knew or reasonably should have known the acts, errors, or omissions alleged in the

Claim might be the basis of a claim; (b) prior to the Policy's April 13, 2020 effective date, the

Johnson Defendants should have given ALPS notice of the acts, errors, or omissions that form

the basis of the Claim or the potential claims against the Johnson Defendants arising from the

acts, errors, or omissions that form the basis of the Claim; and (c) the Johnson Defendants did

not notify ALPS of the acts, errors, or omissions that form the basis of the Claim or the potential

claims against the Johnson Defendants arising from the acts, errors, or omissions that form the

basis of the Claim until September 9, 2020, after inception of the Policy.

84.     The Policy does not afford coverage for the Claim, as articulated in the Suit, to

the extent the relief requested does not constitute "Damages" as defined in the Policy.

(Exhibit A, Insuring Agreements § 1.A & Definitions § 2.H).

85.     The Policy specifically excludes from the definition of "Damages", in relevant

part:

> 3.     Punitive, multiple, or exemplary damages, fines, sanctions, penalties or
> citations, including, without limitation, any consequential or incidental
> damages, attorney's fees or costs, or pre-judgment or post-judgment
> interest resulting therefrom, regardless against whom the same are levied
> or imposed and regardless of whether the same were levied or imposed in
> a separate matter or proceeding[.]

(Exhibit A, Definitions § 2.H.3).

86.     In Wayman's Prayer for Relief in the November 2021 Complaint, Wayman seeks,

*inter alia*, $15 million in punitive damages.  (Exhibit B, Prayer for Relief).

87.     Wayman's demand for punitive damages against the Johnson Defendants is

excluded from the definition of "Damages" and outside the coverage afforded by the Policy.

(Exhibit A, Definitions § 2.H.3).

88.     An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Claim.

89.     Because the Claim—as articulated in the Suit—is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Claim and ALPS has no duty to defend or indemnify the Johnson Defendants with respect to the Claim.

## SECOND CAUSE OF ACTION
### (Reimbursement of Defense Expenses – Against the Johnson Defendants)

90.     ALPS incorporates and realleges paragraphs 1 through 89 as if fully set forth herein.

91.     The Policy states ALPS has no duty to defend or pay Claim Expenses for "any Claim not covered" and has "the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims."  (Exhibit A, Insuring Agreements § 1.B.2).

92.     The Policy defines "Claim Expenses" to mean, in relevant part, "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by" ALPS.  (Exhibit A, Definitions §§ D.1-D.2).

93.     ALPS is defending the Johnson Defendants with respect to the Claim under the Policy subject to a complete reservation of rights, including the right to seek recovery from Johnson, the Johnson Firm, or any insured under the Policy of all amounts paid in defense of non-covered aspects of the Claim.

4873-4326-9380.3

94. For the reasons described above in Paragraphs 76 through 87, the Claim is outside the coverage afforded by the Policy.

95. ALPS is entitled to judgment in its favor and against the Johnson Defendants for the amount of attorneys' fees and costs paid to defend the Johnson Defendants with respect to the Claim because the Claim is not covered under the Policy.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1. Declaring the Policy does not afford coverage to the Johnson Defendants with respect to the Claim, as articulated in the Suit;

2. Declaring ALPS has no duty to defend or indemnify the Johnson Defendants under the Policy with respect to the Claim, as articulated in the Suit;

3. Awarding damages in favor of ALPS and against the Johnson Defendants in the amount of the attorneys' fees and costs paid to defend the Johnson Defendants with respect to the Claim; and

4. Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

Dated:  December 2, 2021

/s/ *Timothy S. Baird*
Timothy S. Baird (VSB 36315)
**KUTAK ROCK LLP**
Bank of America Center
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Email: tim.baird@kutakrock.com

*Attorneys for Plaintiff ALPS Property & Casualty Insurance Company*